**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

TEMPERPACK TECHNOLOGIES, INC.

*Plaintiff,*

v.

MP GLOBAL PRODUCTS, LLC, and
PREGIS LLC,

*Defendants.*

Docket No. 1:26-cv-1708

**JURY TRIAL DEMANDED**

**COMPLAINT**

Plaintiff Temperpack Technologies, Inc. ("Plaintiff" or "TemperPack"), for its complaint against Defendants, MP Global Products, LLC ("MP Global") and Pregis LLC ("Pregis") (collectively, "Defendants"), hereby alleges and states the following:

**INTRODUCTION**

1. This is an action for patent and copyright infringement under the patent laws of the United States, 35 U.S.C. §§ 271, et seq. and 17 U.S.C. §§ 501, et seq., to obtain damages and other relief resulting from Defendants' unauthorized and ongoing actions of making, having made, using, selling, having sold, and offering to sell within the United States products that infringe, directly or indirectly, or enable the infringement of one or more claims of United States Patent Nos. 11,572,973 (the "'973 Patent"), 12,203,584 (the "'584 Patent"), and 12,460,764 (the "'764 Patent") (collectively, the "Asserted Patents"), and Copyright Registration Nos. VA-2-497-335 as corrected in VA-2-513-611 (the "ClimaCell Pack-Out Line Drawing"), and VA-2-497-338 (the "ClimaCell Liner Packaging Artwork") (collectively, the "Copyrighted Works"), including, without limitation, Thermal Box Encapsulated and Non-Encapsulated Liners (collectively, the

"Accused Products" and individually, the "Encapsulated Accused Products" and "Non-Encapsulated Accused Products"), and drawings of the thermal liner packaging on the Accused Products (the "Infringing Work").

## THE PARTIES

2. Temperpack Technologies, Inc. is a corporation organized and existing under the laws of Delaware and having its principal place of business at 4101 Carolina Avenue, Richmond, VA 23222.

3. TemperPack is the assignee and exclusive owner of all right, title, and interest in all Asserted Patents.

4. TemperPack is the exclusive owner of all right, title, and interest, including all rights under copyright, in the Copyrighted Works.

5. On information and belief, MP Global is a Nebraska Limited Liability Company with its principal place of business at 2500 Old Hadar Rd., Norfolk, Nebraska 68702-2283.

6. On information and belief, MP Global manufactures building materials and thermal packaging, and maintained a manufacturing facility at 890 Central Ct., New Albany, Indiana 47150. MP Global may be served with process through its registered agent for service CT Corporation System, 334 North Senate Avenue, Indianapolis, IN 46204.

7. MP Global offered and/or offers its products and services, including the products accused of infringement in this Complaint, to customers and potential customers located in the Southern District of Indiana.

8. On information and belief, Pregis LLC is a Limited Liability Company organized under the laws of Delaware and with its principal place of business at 227 W. Monroe St., Suite 4100, Chicago IL 60606. Pregis may be served with process through its registered agent for service

CT Corporation System, 208 SO Lasalle St., Suite 814, Chicago, IL 60604-1101.

9. Pregis manufactures, markets, and sells specialty packaging products.

10. On information and belief, Pregis recently acquired the packaging division of MP Global Products, LLC, and as successor to such business, continues to operate from the former MP Global facilities in Indiana.[1]

**JURISDICTION AND VENUE**

11. This lawsuit is an action for patent and copyright infringement arising under the patent and copyright laws of the United States, Title 35 and 17 of the United States Code.

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the claims arise under the patent and copyright laws of the United States.

13. This Court has personal jurisdiction over MP Global because it has, directly and/or through agents and/or intermediaries, committed acts of patent and copyright infringement, including within this District, giving rise to this action and has established minimum contacts with Indiana such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. MP Global, directly and/or indirectly at least through agents and intermediaries, has committed acts of infringement in this District by, among other things, making, using, selling, and offering to sell the Accused Products.

14. On information and belief, MP Global regularly conducts business in Indiana, including in this District, and purposefully avails itself of the privileges of conducting business in Indiana and this District. In particular, on information and belief, MP Global, and/or its agents

---

[1] *See* "Pregis Acquires MP Global Packaging Cold Chain and Thermal Packaging Business" published by BusinessWire, Aug. 6, 2026, *available at* https://finance.yahoo.com/small-business/articles/pregis-acquires-mp-global-packaging-150000329.html (last accessed Aug. 12, 2026) ("BusinessWire article") ("Pregis … has acquired MP Global Packaging, a division of MP Global Products … business will continue to operate from its current facilities").

and/or intermediaries, made, used, imported, offered for sale, sold, and/or advertised its products and affiliated services in Indiana, and this District, including but not limited to the Accused Products, sufficient to give rise to jurisdiction.

15. On information and belief, MP Global derived revenue from the sale of Accused Products distributed within Indiana, including within this District, and/or expects or should reasonably expect its actions to have consequences in Indiana.

16. On information and belief, the Court has personal jurisdiction over Pregis (including as successor to the business of MP Global Products LLC) for the same aforementioned reasons as MP Global, as it has acquired the packaging division of MP Global and continues to operate its manufacturing facility in New Albany, Indiana.

17. On information and belief, Pregis has established minimum contacts with Indiana at least through its acquisition of MP Global Packaging and through its operation of its Pregis facility at 1411 Pidco Dr., Plymouth, IN 46563. Further, on information and belief, Pregis derives revenue and value from the sale of Accused Products distributed within Indiana, including within this District, and/or expects or should reasonably expect its actions to have consequences in Indiana.[2]

18. Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400 because MP Global is registered to do business in Indiana, Defendants have or had regular and established places of business in this District, including at least because MP Global and Pregis conduct or have conducted business at least through the New Albany, Indiana branch located in this District at 890

[2] *See* BusinessWire article, *available at* https://finance.yahoo.com/small-business/articles/pregis-acquires-mp-global-packaging-150000329.html (“the acquired business … produces paper-based thermal packaging used to protect temperature-sensitive shipments, ... Pregis will continue to serve existing customers of the business while investing in scaling the technology.”)

Central Ct., New Albany, Indiana and the Plymouth, Indiana branch located at 1411 Pidco Dr., Plymouth, Indiana, and employs individuals within the District.[3] On information and belief, MP Global and Pregis (by virtue of its acquisition of the packaging division of MP Global) have also committed acts of infringement in this District including making, selling, and/or offering for sale the Accused Products.

## BACKGROUND

19. TemperPack is the market leader in sustainable thermal packaging, with patented, plant-based innovations that displace traditional expanded polystyrene (EPS/Styrofoam) and single-use plastics across the cold chain, food, and life science industries and protective shipping.

20. TemperPack was founded in 2015 with a mission to protect e-commerce shipments through sustainable packaging, and since then has protected millions of shipments for its customers across diverse and dynamic industries.

### A. TemperPack's Asserted Patents and Defendants' Infringement Thereof

21. From its founding, TemperPack has invested heavily in research of plant-based materials as alternatives to traditional EPS offerings used in cold chain applications, and recognizing the importance of protecting its technical advances, has cultivated a strong and growing patent portfolio – including the patents asserted in this action.

22. TemperPack first notified MP Global of the '973 Patent and the '584 Patent in October 2025, and the '764 Patent in February 2026, and its communication with MP Global

[3] For example, MP Global recently advertised a "Production Worker" position in New Albany, Indiana. *See* New Albany / Southern Indiana Jobs Group, Facebook, *available at* http://www.facebook.com/groups/931982526075984/posts/1051046997502869 (last accessed Aug. 11, 2026) ("Our client, MP Global, is urgently hiring Production Worker positions!" posted June 9, 2026). Further, for example, Pregis acquired MP Global Packaging which "operates two manufacturing facilities, in New Albany, Ind., and Norfolk, Neb., and employs approximately 110 people." *See* BusinessWire Article *available at* https://finance.yahoo.com/small-business/articles/pregis-acquires-mp-global-packaging-150000329.html.

regarding alleged infringement has been ongoing since that time.

23. TemperPack first notified Pregis of the Asserted Patents and the infringement of the ’973 Patent, the ’584 Patent, and the ’764 Patent by the Accused Products on August 13, 2026.

24. On information and belief, Pregis had knowledge of TemperPack’s notice of infringement to MP Global regarding the infringement of the Asserted Patents by the Accused Products during the process leading up to Pregis’s acquisition of the packaging division of MP Global.

25. TemperPack continues to file patent applications to protect its innovations, including the recently allowed U.S. Patent Application No. 19/341,675 (published as U.S. Patent Publication No. 2026/0029081), entitled “Thermal Insulation Liners,” which is directed to the technology at issue in this action. On information and belief, the Accused Products will infringe at least one of the claims of the patent resulting from U.S. Patent Application No. 19/341,675 upon its issuance, and TemperPack anticipates amending this Complaint to allege such infringement in due course following the issuance of the patent.

26. On information and belief, to the extent applicable, TemperPack has complied with 35 U.S.C. § 287, at least because Defendants have knowledge of the Asserted Patents and notice of infringement thereof.

27. Defendants further have had notice of its infringement of each of the Asserted Patents at least as of the filing and service of this Complaint.

28. Despite Defendants’ knowledge of the Asserted Patents, and notice of their infringement thereof, Defendants continued to engage in infringing activities.

**B. TemperPack’s Copyrighted Works and Defendants’ Infringement Thereof**

29. Counts VII-X asserted herein arise out of and are based on MP Global’s copying,

reproduction, and violation of TemperPack's copyrights in the Copyrighted Works, and Pregis's continued operation of those acts (including as successor to the packaging business of MP Global), as further set forth below.

30. TemperPack commissioned Mobelux LLC to create the ClimaCell Pack-Out Line Drawing, and Mobelux LLC assigned all right, title, and interest in and to the Copyrighted Work to TemperPack, effective as of June 2019. TemperPack is and has been, at all times relevant herein, the exclusive owner of all rights under copyright in the Copyrighted Work.

31. TemperPack created the ClimaCell Liner Packaging Artwork in or around 2021 with a date of first publication of May 1, 2022. As a result, TemperPack is the owner of all copyright rights in the Copyrighted Works.

32. TemperPack owns a federal registration for the Copyrighted Works.

33. The designs that are the subject of the Copyrighted Works have been widely disseminated throughout the United States for several years. TemperPack has published, distributed, and displayed the Copyrighted Works on its public-facing website (temperpack.com) and through the manufacture and distribution of hundreds of thousands of ClimaCell thermal liner inserts bearing the Copyrighted Works to customers throughout the United States across the food, life sciences, and cold-chain shipping industries. TemperPack and the Defendants are direct competitors in the thermal packaging industry, manufacturing and selling insulated liner products to the same customers and through the same distribution channels. Since the creation of the Copyrighted Work, TemperPack has manufactured and published copies of the Copyrighted Works in the form of, for example, its ClimaCell Liner packaging products incorporating the Copyrighted Works in the United States.

34. On information and belief, Defendants are engaged in the manufacture of thermal

packaging, including the Accused Products. The printed graphics on the Accused Products include the Infringing Work.

35. The Infringing Work is strikingly similar to the Copyrighted Works. The ClimaCell Pack-Out Line Drawing is an original illustration depicting an exploded isometric view of a thermal packaging system, rendered in a distinctive geometric line-art style with specific creative choices including the angular arrangement of packaging components, the particular perspective and spatial relationships between the depicted elements, and the use of thin connecting lines to callout labels – design choices that are arbitrary and unlike any standard industry convention or publicly available prior art. The Infringing Work reproduces these same arbitrary creative choices with such precision that independent creation is not a plausible explanation for the resemblance.

36. MP Global has been manufacturing, publishing, printing, and publicly displaying or causing to be manufactured, published, printed, and publicly displayed, the Infringing Work.

37. On information and belief, since the acquisition of the packaging division of MP Global, Pregis has been and continues to be manufacturing, publishing, printing, and publicly displaying or causing to be manufactured, published, printed, and publicly displayed, the Infringing Work.

38. On information and belief, MP Global obtained physical possession of or otherwise viewed TemperPack's Copyrighted Works and intentionally copied the Copyrighted Works to create the Infringing Work. MP Global's copying is evidenced by two independent facts: (i) the Infringing Work reproduces the specific creative expression of the Copyrighted Works with such precision – including arbitrary design choices among many possible alternatives that bear no resemblance to any standard, convention, or prior work in the thermal packaging industry – that independent creation, coincidence, or reliance on a common source are not plausible explanations

for the resemblance; and (ii) MP Global had a reasonable opportunity to access the Copyrighted Works as a result of the widespread dissemination of the Copyrighted Works on TemperPack's website, on physical packaging distributed nationwide to customers that both TemperPack and MP Global serve, and through the parties' direct competition in the same specialized thermal packaging market.

39. MP Global copied, and on information and belief Pregis continues to copy, the Copyrighted Works without TemperPack's authorization, consent, or knowledge, and without any remuneration to TemperPack.

40. Since MP Global copied the Copyrighted Works to create the Infringing Work, it has applied the Infringing Work to its packaging materials, including the Accused Products. On information and belief, Pregis continues to do so.

41. On information and belief, MP Global has also reproduced and publicly displayed the Infringing Work through one or more websites, including its website (https://mpglobalpackaging.com/) where it displays the Infringing Work on, for example, images of the Accused Products.

42. As a result of Defendants' actions described above, TemperPack has been directly damaged, and is continuing to be damaged, by the unauthorized reproduction of the Infringing Work. Defendants have never accounted to or otherwise paid TemperPack for its use of the Copyrighted Works.

43. Defendants' acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to TemperPack for which TemperPack has no adequate remedy at law.

**COUNT I**
**(Infringement of U.S. Patent No. 11,572,973 by Defendant MP Global)**

44. TemperPack re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

45. On February 7, 2023, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '973 Patent, entitled "Thermal Insulation Liners," to inventors James McGoff, Charles Vincent, and Brian Powers. A true and correct copy of the '973 Patent is attached hereto as Exhibit A. The '973 Patent is valid and enforceable.

46. Temperpack Technologies, Inc. is the assignee and exclusive owner of all right, title, and interest in the '973 Patent.

47. MP Global had knowledge of the '973 Patent no later than October 31, 2025, when TemperPack informed it that the marketing, sale, and deployment of the Accused Products constituted an infringement of the '973 Patent.

48. On information and belief, MP Global has infringed, one or more claims of the '973 Patent at least under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, without authority, consent, right or license, by making, using, selling, and/or offering for sale each of the Accused Products in the United States in accordance with all of the limitations of at least one of the claims of the '973 Patent.

49. As shown in the claim chart attached hereto as Exhibit B, the Accused Products practice all elements of at least claims 1, 19, 23, and 26 of the '973 Patent. Exhibit B is representative of the manner of infringement of all of the Accused Products, including Encapsulated and Non-Encapsulated Thermal Liners.

50. MP Global has also actively induced and/or contributed to, infringement of the '973 Patent under 35 U.S.C. §§ 271(b) and (c), either literally or under the doctrine of equivalents, and

continues to do so. MP Global has knowledge of the ’973 Patent and notice of its infringement thereof. MP Global actively induced third parties, including its customers and end users, to purchase and use the Accused Products such that customers directly infringe the ’973 Patent.[4] MP Global also contributed to others practicing the ’973 Patent because MP Global sold and offered for sale the Accused Products for use in practicing the ’973 Patent and it knows that the Accused Products are especially made or adapted to practice the asserted claims and are not staple articles of commerce suitable for substantial non-infringing use.

51. MP Global’s infringing actions have been knowing, intentional, and willful, based on, among other things, MP Global’s knowledge of the ’973 Patent. On information and belief, Defendant’s infringing acts will continue unless restrained by this Court.

52. MP Global’s actions have caused harm to TemperPack, which may not be fully compensable by monetary damages. MP Global’s infringement of the ’973 Patent has caused TemperPack to suffer irreparable harm, and TemperPack is entitled to preliminary and permanent injunctive relief to prevent further infliction of such harm.

53. As a result of MP Global’s infringing conduct, TemperPack has suffered damages in an amount that, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284, including past damages under 35 U.S.C. § 287.

**COUNT II**
**(Infringement of U.S. Patent No. 11,572,973 by Defendant Pregis LLC)**

54. TemperPack re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

[4] MP Global provides marketing and promotional materials on its website (mpglobalpackaging.com), including its Thermal Box Liners Sell Sheet (*available at* mpglobalpackaging.com/wp-content/uploads/2024/03/Thermal-Box-Liners-Sell-Sheet-With-Logos-032524-IN-HOUSE-DS.pdf) (last accessed Aug. 12, 2026).

55. Pregis had knowledge of the ’973 Patent no later than August 13, 2026, when TemperPack informed Pregis that the marketing, sale, and deployment of the Accused Products constituted an infringement of the ’973 Patent.

56. On information and belief, Pregis had knowledge of the ’973 Patent, and TemperPack’s claims that the Accused Products infringed claims of the ’973 Patent, during the process that led to its acquisition of the MP Global packaging division.

57. On information and belief, Pregis continues the operations of the MP Global packaging division, including making, using, selling, and/or offering for sale each of the Accused Products in the United States.[5]

58. On information and belief, Pregis infringes, and has infringed, one or more claims of the ’973 Patent at least under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, without authority, consent, right or license, by making, using, selling, and/or offering for sale each of the Accused Products in the United States in accordance with all of the limitations of at least one of the claims of the ’973 Patent.

59. As previously discussed, the Exhibit B claim chart shows the Accused Products practice all elements of at least claims 1, 19, 23, and 26 of the ’973 Patent. Exhibit B is representative of the manner of infringement of all of the Accused Products, including Encapsulated and Non-Encapsulated Thermal Liners.

60. On information and belief, by virtue of its acquisition and continued operations of the former MP Global facilities, Pregis also actively induces and/or contributes to, and have

---

[5] *See* BusinessWire article, *available at* https://finance.yahoo.com/small-business/articles/pregis-acquires-mp-global-packaging-150000329.html (“the acquired business … produces paper-based thermal packaging used to protect temperature-sensitive shipments, ... Pregis will continue to serve existing customers of the business while investing in scaling the technology.”)

induced and/or contributed to, infringement of the ’973 Patent under 35 U.S.C. §§ 271(b) and (c), either literally or under the doctrine of equivalents, and continues to do so. Pregis has knowledge of the ’973 Patent and notice of its infringement by the Accused Products thereof. Pregis actively induces third parties, including its customers and end users, to purchase and use the Accused Products such that customers directly infringe the ’973 Patent.[6] Pregis also contributes to others practicing the ’973 Patent because Pregis sells and offers for sale the Accused Products for use in practicing the ’973 Patent and Pregis knows that the Accused Products are especially made or adapted to practice the asserted claims and are not staple articles of commerce suitable for substantial non-infringing use.

61. Pregis’s infringing actions have been, and continue to be, knowing, intentional, and willful, based on, among other things, Pregis’s knowledge of the ’973 Patent. On information and belief, Pregis’s infringing acts will continue unless restrained by this Court.

62. Pregis’s actions have caused and are continuing to cause harm to TemperPack, which may not be fully compensable by monetary damages. Pregis’s infringement of the ’973 Patent has caused, is causing, and/or will continue to cause TemperPack to suffer irreparable harm, and TemperPack is entitled to preliminary and permanent injunctive relief to prevent further infliction of such harm.

63. As a result of Pregis’s infringing conduct, TemperPack has suffered damages and will continue to suffer damages in an amount that, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284, including past

[6] On information and belief, Pregis is continuing MP Global’s previous activities, providing marketing and promotional materials on MP Global Packaging’s website (mpglobalpackaging.com), including its Thermal Box Liners Sell Sheet (*available at* mpglobalpackaging.com/wp-content/uploads/2024/03/Thermal-Box-Liners-Sell-Sheet-With-Logos-032524-IN-HOUSE-DS.pdf) (last accessed Aug. 12, 2026).

damages under 35 U.S.C. § 287.

**COUNT III**
**(Infringement of U.S. Patent No. 12,203,584 by Defendant MP Global)**

64. TemperPack re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

65. On January 21, 2025, the USPTO duly and legally issued the ’584 Patent, entitled “Thermal Insulation Liners,” to inventors James McGoff, Charles Vincent, and Brian Powers. A true and correct copy of the ’584 Patent is attached hereto as Exhibit C. The ’584 Patent is valid and enforceable.

66. Temperpack Technologies, Inc. is the assignee and exclusive owner of all right, title, and interest in the ’584 Patent.

67. MP Global had knowledge of the ’584 Patent no later than October 31, 2025, when TemperPack informed MP Global that the marketing, sale, and deployment of the Non-Encapsulated Accused Products constituted an infringement of the ’584 Patent. On information and belief, based on information presently available, TemperPack does not identify the Encapsulated Accused Products under this Count for infringement of the ’584 Patent.

68. On information and belief, MP Global has infringed, one or more claims of the ’584 Patent at least under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, without authority, consent, right or license, by making, using, selling, and/or offering to sell each of the Non-Encapsulated Accused Products in the United States in accordance with all of the limitations of at least one of the claims of the ’584 Patent.

69. As shown in the claim chart attached hereto as Exhibit D, the Non-Encapsulated Accused Products practice all elements of at least claim 19 of the ’584 Patent. Exhibit D is representative of the manner of infringement of all of the Non-Encapsulated Accused Products.

70. MP Global has also actively induced and/or contributed to, infringement of the ’584 Patent under 35 U.S.C. §§ 271(b) and (c), either literally or under the doctrine of equivalents. MP Global has knowledge of the ’584 Patent and notice of its infringement thereof. MP Global actively induced third parties, including its customers and end users, to purchase and use the Non-Encapsulated Accused Products such that customers directly infringe the ’584 Patent.[7] MP Global also contributed to others practicing the ’584 Patent because MP Global sold and offered for sale the Non-Encapsulated Accused Products for use in practicing the ’584 Patent and MP Global knows that the Non-Encapsulated Accused Products are especially made or adapted to practice the asserted claim and are not staple articles of commerce suitable for substantial non-infringing use.

71. MP Global’s infringing actions have been knowing, intentional, and willful, based on, among other things, MP Global’s knowledge of the ’584 Patent. On information and belief, Defendant’s infringing acts will continue unless restrained by this Court.

72. MP Global’s actions have caused harm to TemperPack, which may not be fully compensable by monetary damages. MP Global’s infringement of the ’584 Patent has caused TemperPack to suffer irreparable harm, and TemperPack is entitled to preliminary and permanent injunctive relief to prevent further infliction of such harm.

73. As a result of MP Global’s infringing conduct, TemperPack has suffered damages in an amount that, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284, including past damages under 35 U.S.C. § 287.

---

[7] MP Global provides marketing and promotional materials on its website (mpglobalpackaging.com), including its Thermal Box Liners Sell Sheet (*available at* mpglobalpackaging.com/wp-content/uploads/2024/03/Thermal-Box-Liners-Sell-Sheet-With-Logos-032524-IN-HOUSE-DS.pdf) (last accessed Aug. 12, 2026).

**COUNT IV**
**(Infringement of U.S. Patent No. 12,203,584 by Defendant Pregis LLC)**

74. TemperPack re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

75. Pregis had knowledge of the ’584 Patent no later than August 13, 2026, when TemperPack informed Pregis that the marketing, sale, and deployment of the Accused Products constituted an infringement of the ’584 Patent.

76. On information and belief, Pregis had knowledge of the ’584 Patent during its acquisition of the MP Global Packaging division.

77. On information and belief, Pregis will continue the operations of the MP Global Packaging division, including making, using, selling, and/or offering for sale each of the Accused Products in the United States.[8]

78. On information and belief, Pregis infringes, and has infringed, one or more claims of the ’584 Patent at least under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, without authority, consent, right or license, by making, using, selling, and/or offering for sale each of the Accused Products in the United States in accordance with all of the limitations of at least one of the claims of the ’584 Patent.

79. As previously discussed, the Exhibit D claim chart shows the Accused Products practice all elements of at least claim 19 of the ’584 Patent. Exhibit D is representative of the manner of infringement of all of the Non-Encapsulated Accused Products.

80. On information and belief, by virtue of its acquisition and continued operations of

[8] *See* BusinessWire article, *available at* https://finance.yahoo.com/small-business/articles/pregis-acquires-mp-global-packaging-150000329.html (“the acquired business … produces paper-based thermal packaging used to protect temperature-sensitive shipments, ... Pregis will continue to serve existing customers of the business while investing in scaling the technology.”)

the MP Global facilities, Pregis also actively induces and/or contributes to, and have induced and/or contributed to, infringement of the ’584 Patent under 35 U.S.C. §§ 271(b) and (c), either literally or under the doctrine of equivalents, and continues to do so. Pregis has knowledge of the ’584 Patent and notice of its infringement thereof. Pregis actively induces third parties, including its customers and end users, to purchase and use the Accused Products such that customers directly infringe the ’584 Patent.[9] Pregis also contributes to others practicing the ’584 Patent because Pregis sells and offers for sale the Accused Products for use in practicing the ’584 Patent and Pregis knows that the Accused Products are especially made or adapted to practice the asserted claim and are not staple articles of commerce suitable for substantial non-infringing use.

81. Pregis’s infringing actions have been, and continue to be, knowing, intentional, and willful, based on, among other things, Pregis’s knowledge of the ’584 Patent. On information and belief, Pregis’s infringing acts will continue unless restrained by this Court.

82. Pregis’s actions have caused and are continuing to cause harm to TemperPack, which may not be fully compensable by monetary damages. Pregis’s infringement of the ’584 Patent has caused, is causing, and/or will continue to cause TemperPack to suffer irreparable harm, and TemperPack is entitled to preliminary and permanent injunctive relief to prevent further infliction of such harm.

83. As a result of Pregis’s infringing conduct, TemperPack has suffered damages and will continue to suffer damages in an amount that, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284, including past

[9] On information and belief, Pregis is continuing MP Global’s previous activities, providing marketing and promotional materials on MP Global Packaging’s website (mpglobalpackaging.com), including its Thermal Box Liners Sell Sheet (*available at* mpglobalpackaging.com/wp-content/uploads/2024/03/Thermal-Box-Liners-Sell-Sheet-With-Logos-032524-IN-HOUSE-DS.pdf) (last accessed Aug. 12, 2026).

damages under 35 U.S.C. § 287.

**COUNT V**
**(Infringement of U.S. Patent No. 12,460,764 by MP Global)**

84. TemperPack re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

85. On November 4, 2025, the USPTO duly and legally issued the ’764 Patent, entitled “Thermal Insulation Liners,” to inventors James McGoff, Charles Vincent, and Brian Powers. A true and correct copy of the ’764 Patent is attached hereto as Exhibit E. The ’764 Patent is valid and enforceable.

86. Temperpack Technologies, Inc. is the assignee and exclusive owner of all right, title, and interest in the ’764 Patent.

87. MP Global had knowledge of the ’764 Patent no later than February 6, 2026, when TemperPack informed MP Global that the marketing, sale, and deployment of the Accused Products constituted an infringement of the ’764 Patent.

88. On information and belief, MP Global has infringed one or more claims of the ’764 Patent at least under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, without authority, consent, right or license, by making, using, selling, and/or offering for sale each of the Accused Products in the United States in accordance with all of the limitations of at least one of the claims of the ’764 Patent.

89. As shown in the claim chart attached hereto as Exhibit F, the Accused Products practice all elements of at least claims 1, 22, and 30 of the ’764 Patent. Exhibit F is representative of the manner of infringement of all of the Accused Products, including Encapsulated and Non-Encapsulated Thermal Liners.

90. MP Global has also actively induced and/or contributed to, infringement of the ’764

Patent under 35 U.S.C. §§ 271(b) and (c), either literally or under the doctrine of equivalents. MP Global has knowledge of the ’764 Patent and notice of its infringement thereof. MP Global actively induced third parties, including its customers and end users, to purchase and use the Accused Products such that customers directly infringe the ’764 Patent.[10] MP Global also contributed to others practicing the ’764 Patent because MP Global sold and offered for sale the Accused Products for use in practicing the ’764 Patent and MP Global knows that the Accused Products are especially made or adapted to practice the asserted claims and are not staple articles of commerce suitable for substantial non-infringing use.

91. MP Global’s infringing actions have been, knowing, intentional, and willful, based on, among other things, MP Global’s knowledge of the ’764 Patent. On information and belief, Defendant’s infringing acts will continue unless restrained by this Court.

92. MP Global’s actions have caused harm to TemperPack, which may not be fully compensable by monetary damages. MP Global’s infringement of the ’764 Patent has caused, TemperPack to suffer irreparable harm, and TemperPack is entitled to preliminary and permanent injunctive relief to prevent further infliction of such harm.

93. As a result of MP Global’s infringing conduct, TemperPack has suffered damages that, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284, including past damages under 35 U.S.C. § 287.

**COUNT VI**
**(Infringement of U.S. Patent No. 12,460,764 by Defendant Pregis LLC)**

94. TemperPack re-alleges and incorporates by reference the allegations in the

[10] MP Global provides marketing and promotional materials on its website (mpglobalpackaging.com), including its Thermal Box Liners Sell Sheet (*available at* mpglobalpackaging.com/wp-content/uploads/2024/03/Thermal-Box-Liners-Sell-Sheet-With-Logos-032524-IN-HOUSE-DS.pdf) (last accessed Aug. 12, 2026).

foregoing paragraphs as if fully set forth herein.

95. Pregis had knowledge of the ’764 Patent no later than August 13, 2026, when TemperPack informed Pregis that the marketing, sale, and deployment of the Accused Products constituted an infringement of the ’764 Patent.

96. On information and belief, Pregis had knowledge of the ’764 Patent, and TemperPack’s claims that the Accused Products infringed claims of the ’764 Patent, during the process that led to its acquisition of the MP Global packaging division.

97. On information and belief, Pregis continues the operations of the MP Global packaging division, including making, using, selling, and/or offering for sale each of the Accused Products in the United States.[11]

98. On information and belief, Pregis infringes, and has infringed, one or more claims of the ’764 Patent at least under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, without authority, consent, right or license, by making, using, selling, and/or offering for sale each of the Accused Products in the United States in accordance with all of the limitations of at least one of the claims of the ’764 Patent.

99. As previously discussed, the Exhibit F claim chart shows the Accused Products practice all elements of at least claims 1, 22, and 30 of the ’764 Patent. Exhibit F is representative of the manner of infringement of all of the Accused Products, including Encapsulated and Non-Encapsulated Thermal Liners.

100. On information and belief, by virtue of its acquisition and continued operations of

[11] *See* BusinessWire article, *available at* https://finance.yahoo.com/small-business/articles/pregis-acquires-mp-global-packaging-150000329.html (“the acquired business … produces paper-based thermal packaging used to protect temperature-sensitive shipments, ... Pregis will continue to serve existing customers of the business while investing in scaling the technology.”)

the former MP Global facilities, Pregis also actively induces and/or contributes to, and have induced and/or contributed to, infringement of the ’764 Patent under 35 U.S.C. §§ 271(b) and (c), either literally or under the doctrine of equivalents, and continues to do so. Pregis has knowledge of the ’764 Patent and notice of its infringement by the Accused Products thereof. Pregis actively induces third parties, including its customers and end users, to purchase and use the Accused Products such that customers directly infringe the ’764 Patent.[12] Pregis also contributes to others practicing the ’764 Patent because Pregis sells and offers for sale the Accused Products for use in practicing the ’764 Patent and Pregis knows that the Accused Products are especially made or adapted to practice the asserted claim and are not staple articles of commerce suitable for substantial non-infringing use.

101. Pregis’s infringing actions have been, and continue to be, knowing, intentional, and willful, based on, among other things, Pregis’s knowledge of the ’764 Patent. On information and belief, Pregis’s infringing acts will continue unless restrained by this Court.

102. Pregis’s actions have caused and are continuing to cause harm to TemperPack, which may not be fully compensable by monetary damages. Pregis’s infringement of the ’764 Patent has caused, is causing, and/or will continue to cause TemperPack to suffer irreparable harm, and TemperPack is entitled to preliminary and permanent injunctive relief to prevent further infliction of such harm.

103. As a result of Pregis’s infringing conduct, TemperPack has suffered damages and will continue to suffer damages in an amount that, by law, cannot be less than a reasonable royalty,

---

[12] On information and belief, Pregis is continuing MP Global’s previous activities, providing marketing and promotional materials on MP Global Packaging’s website (mpglobalpackaging.com), including its Thermal Box Liners Sell Sheet (*available at* mpglobalpackaging.com/wp-content/uploads/2024/03/Thermal-Box-Liners-Sell-Sheet-With-Logos-032524-IN-HOUSE-DS.pdf) (last accessed Aug. 12, 2026).

together with interest and costs as fixed by the Court under 35 U.S.C. § 284, including past damages under 35 U.S.C. § 287.

**COUNT VII**
**(Federal Copyright Infringement of VA-2-497-335 Pursuant to 17 U.S.C. § 501 by MP Global)**

104. TemperPack re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

105. TemperPack commissioned Mobelux LLC to create the Copyrighted Work, and Mobelux LLC assigned all right, title, and interest in and to the Copyrighted Work to TemperPack, effective as of June 2019. A true and correct copy of the copyright assignment agreement is attached hereto as Exhibit G. TemperPack is and has been, at all times relevant herein, the exclusive owner of all rights under copyright in the Copyrighted Work.

106. TemperPack is the owner of valid and subsisting United States Copyright Registration No. VA-2-497-335 as corrected in VA-2-513-611 for the ClimaCell Pack-Out Line Drawing Copyrighted Work, issued by the United States Copyright Office on April 20, 2026. Attached as Exhibit H is a true and correct copy of the registration certificate for TemperPack's ClimaCell Pack-Out Line Drawing Copyrighted Work. Attached as Exhibit I is a true and correct copy of the correction certificate for the registration.

107. The Copyrighted Work is an original work of visual art containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, *et seq*.

108. Through MP Global's conduct alleged herein, including MP Global's reproduction, distribution, and public display of the Infringing Work, which is copied from and substantially similar to TemperPack's Copyrighted Work, without TemperPack's permission, MP Global has directly infringed TemperPack's exclusive rights in the Copyrighted Work in violation of the

Copyright Act, 17 U.S.C. § 501.

109. Attached hereto as Exhibit J is a side-by-side comparison of the Infringing Work and the Copyrighted Works. As can be seen from viewing and comparing the works, the Infringing Work reproduces the specific protectable expression of the Copyrighted Work —including the distinctive exploded isometric perspective, the geometric line-art rendering style, the angular spatial arrangement of packaging components, and the overall visual composition —with such precision that the works are virtually identical. These shared design elements reflect arbitrary creative choices that are not dictated by function, industry convention, or the nature of the subject matter, and that bear no resemblance to any prior publicly available work. The only plausible explanation for this degree of similarity is that MP Global copied the Copyrighted Work. Given these similarities, the Infringing Product is identical to and indistinguishable from TemperPack's Copyrighted Works.

110. On information and belief, MP Global's infringing conduct alleged herein was willful and with full knowledge of TemperPack's rights in the Copyrighted Work, and enabled MP Global to illegally obtain profit therefrom.

111. As a direct and proximate result of MP Global's infringing conduct alleged herein, TemperPack has been harmed and is entitled to damages in an amount to be proven at trial. Pursuant to 17 U.S.C. § 504(b), TemperPack is also entitled to recovery of MP Global's profits attributable to MP Global's infringing conduct alleged herein, including from any and all sales of the Infringing Work and products incorporating or embodying the Infringing Work, and an accounting of and a constructive trust with respect to such profits.

112. Alternatively, TemperPack is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for MP Global's infringing conduct, and for such

other amount as may be proper pursuant to 17 U.S.C. § 504(c).

113. TemperPack further is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

114. As a direct and proximate result of the MP Global's infringing conduct alleged herein, TemperPack has sustained substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless MP Global's infringing conduct is enjoined by this Court, MP Global will continue to infringe the Copyrighted Work. TemperPack therefore is entitled to preliminary and permanent injunctive relief restraining and enjoining MP Global's ongoing infringing conduct.

**COUNT VIII**
**(Federal Copyright Infringement of VA-2-497-335 Pursuant to 17 U.S.C. § 501 by Pregis)**

115. TemperPack re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

116. Through Pregis's conduct alleged herein of acquiring MP Global's packaging division and continuing its operations, including the reproduction, distribution, and public display of the Infringing Work, which is copied from and substantially similar to TemperPack's Copyrighted Work, without TemperPack's permission, Pregis has directly infringed TemperPack's exclusive rights in the Copyrighted Work in violation of the Copyright Act, 17 U.S.C. § 501.

117. As previously alleged, Exhibit J is a side-by-side comparison of the Infringing Work and the Copyrighted Works. As can be seen from viewing and comparing the works, and as previously set forth, the Infringing Product is identical to and indistinguishable from TemperPack's Copyrighted Works.

118. On information and belief, Pregis's infringing conduct alleged herein was and continues to be willful and with full knowledge of TemperPack's rights in the Copyrighted Work,

and enabled Pregis to illegally obtain profit therefrom.

119. As a direct and proximate result of Pregis's infringing conduct alleged herein, TemperPack has been harmed and is entitled to damages in an amount to be proven at trial. Pursuant to 17 U.S.C. § 504(b), TemperPack is also entitled to recovery of Pregis's profits attributable to Pregis's infringing conduct alleged herein, including from any and all sales of the Infringing Work and products incorporating or embodying the Infringing Work, and an accounting of and a constructive trust with respect to such profits.

120. Alternatively, TemperPack is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for Pregis's infringing conduct, and for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

121. TemperPack further is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

122. As a direct and proximate result of the Pregis's infringing conduct alleged herein, TemperPack has sustained substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless Pregis's infringing conduct is enjoined by this Court, Pregis will continue to infringe the Copyrighted Work. TemperPack therefore is entitled to preliminary and permanent injunctive relief restraining and enjoining Pregis's ongoing infringing conduct.

**COUNT IX**
**(Federal Copyright Infringement of VA-2-497-338 Pursuant to 17 U.S.C. § 501 by MP Global)**

123. TemperPack re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

124. TemperPack is the owner of valid and subsisting United States Copyright Registration No. VA-2-497-338 for the ClimaCell Liner Packaging Artwork Copyrighted Work,

issued by the United States Copyright Office on April 20, 2026. Attached as Exhibit K is a true and correct copy of the registration certificate for TemperPack's ClimaCell Liner Packaging Artwork.

125. The Copyrighted Work is an original work of visual art containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, *et seq*.

126. TemperPack created the Copyrighted Work on or around August 2021.

127. Through MP Global's conduct alleged herein, including MP Global's reproduction, distribution, and public display of the Infringing Work, which is copied from and substantially similar to TemperPack's Copyrighted Work, without TemperPack's permission, MP Global has directly infringed TemperPack's exclusive rights in the Copyrighted Work in violation of the Copyright Act, 17 U.S.C. § 501.

128. Attached hereto as Exhibit J is a side-by-side comparison of the Infringing Work and the Copyrighted Works. As can be seen from viewing and comparing the works, the Infringing Work reproduces the specific protectable expression of the Copyrighted Work – including the repeating diagonal pattern arrangement, the geometric line-art illustration of a thermal liner being inserted into an open shipping box, and the overall visual composition of branding elements, recycling instructions, and graphic elements on kraft paper – with such precision that the works are virtually identical. The specific selection, coordination, and arrangement of these elements reflect arbitrary creative choices among many possible alternatives, and are not dictated by function, industry convention, or the nature of the subject matter. The only plausible explanation for this degree of similarity is that MP Global copied the Copyrighted Work.

129. On information and belief, MP Global's infringing conduct alleged herein was

willful and with full knowledge of TemperPack's rights in the Copyrighted Work and has enabled MP Global to illegally obtain profit therefrom.

130. As a direct and proximate result of MP Global's infringing conduct alleged herein, TemperPack has been harmed and is entitled to damages in an amount to be proven at trial. Pursuant to 17 U.S.C. § 504(b), TemperPack is also entitled to recovery of MP Global's profits attributable to MP Global's infringing conduct alleged herein, including from any and all sales of the Infringing Work and products incorporating or embodying the Infringing Work, and an accounting of and a constructive trust with respect to such profits.

131. Alternatively, TemperPack is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for MP Global's infringing conduct, and for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

132. TemperPack further is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

133. As a direct and proximate result of the MP Global's infringing conduct alleged herein, TemperPack has sustained substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless Defendant's infringing conduct is enjoined by this Court, Defendant will continue to infringe the Copyrighted Work. TemperPack therefore is entitled to preliminary and permanent injunctive relief restraining and enjoining Defendant's ongoing infringing conduct.

**COUNT X**
**(Federal Copyright Infringement of VA-2-497-338 Pursuant to 17 U.S.C. § 501 by Pregis)**

134. TemperPack re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

135. Through Pregis's conduct alleged herein of acquiring MP Global's packaging

division and continuing its operations, including the reproduction, distribution, and public display of the Infringing Work, which is copied from and substantially similar to TemperPack's Copyrighted Work, without TemperPack's permission, Pregis has directly infringed TemperPack's exclusive rights in the Copyrighted Work in violation of the Copyright Act, 17 U.S.C. § 501.

136. As previously alleged, Exhibit J is a side-by-side comparison of the Infringing Work and the Copyrighted Works. As can be seen from viewing and comparing the works, and as previously set forth, the Infringing Product is identical to and indistinguishable from TemperPack's Copyrighted Works.

137. On information and belief, Pregis's infringing conduct alleged herein was willful and with full knowledge of TemperPack's rights in the Copyrighted Work, and enabled Pregis to illegally obtain profit therefrom.

138. As a direct and proximate result of Pregis's infringing conduct alleged herein, TemperPack has been, and continues to be, harmed and is entitled to damages in an amount to be proven at trial. Pursuant to 17 U.S.C. § 504(b), TemperPack is also entitled to recovery of Pregis's profits attributable to Pregis's infringing conduct alleged herein, including from any and all sales of the Infringing Work and products incorporating or embodying the Infringing Work, and an accounting of and a constructive trust with respect to such profits.

139. Alternatively, TemperPack is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for Pregis's infringing conduct, and for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

140. TemperPack further is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

141. As a direct and proximate result of the Pregis's infringing conduct alleged herein,

TemperPack has sustained substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless Pregis's infringing conduct is enjoined by this Court, Pregis will continue to infringe the Copyrighted Work. TemperPack therefore is entitled to preliminary and permanent injunctive relief restraining and enjoining Pregis's ongoing infringing conduct.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests this Court:

A. Enter a judgment that Defendants infringe each Asserted Patent;

B. Enter a judgment that Defendants have violated Section 501 of the Copyright Act (17 U.S.C. § 501) for each Copyrighted Work;

C. Grant preliminary, permanent and final injunctive relief enjoining Defendants and their officers, directors, managers, employees, affiliates, agents, representatives, parents, subsidiaries, successors, assigns, those in privity with them, and all others aiding, abetting, or acting in concert or active participation therewith, from infringing the Asserted Patents and Copyrighted Works;

D. Order an award of compensatory damages, not less than a reasonable royalty of the Accused Products under 35 U.S.C. § 284, together with pre-judgment and post-judgment interests and costs;

E. Enter a judgment that Defendants' patent infringement was willful and order treble damages under 35 U.S.C. § 284;

F. Order Defendants provide an accounting of Defendants' profits attributable to Defendants' infringing conduct, including Defendants' profits from sales of the Infringing Work and any products, works, or other materials that include, copy, are

derived from, or otherwise embody the Copyrighted Work;

G. That Defendant be ordered to destroy or deliver up for destruction all materials in Defendants' possession, custody, or control used by Defendant in connection with Defendants' infringing conduct, including without limitation all remaining inventory of the Infringing Work and any products and works that embody any reproduction or other copy or colorable imitation of the Copyrighted Work, as well as all means for manufacturing them;

H. That Defendants be ordered, pursuant to 17 U.S.C. § 503(a), to deliver up for impoundment during the pendency of this action all copies of the Infringing Work, all plates, molds, matrices, masters, tapes, film negatives, digital files, and other articles by means of which infringing copies may be reproduced, which are in Defendants' possession, custody, or control;

I. That Defendants, at their own expense, be ordered to recall the Infringing Work from any distributors, retailers, vendors, or others that have distributed the Infringing Work on Defendants' behalf, and any products, works or other materials that include, copy, are derived from, or otherwise embody the Infringing Work or the Copyrighted Work, and that Defendants be ordered to destroy or deliver up for destruction all materials returned to it;

J. Order TemperPack a further awarding of:

   i. Defendants' profits obtained as a result of Defendants' infringing conduct, including but not limited to all profits from sales and other exploitation of the Infringing Work and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Infringing Work or the Copyrighted Work, or in the Court's discretion, such amount as the Court finds to be just and proper;

   ii. damages sustained by Plaintiff as a result of Defendants' infringing conduct, in an amount to be proven at trial; and

iii. should Plaintiff so elect, statutory damages pursuant to 17 U.S.C. § 504(c) instead of actual damages or profits; and

iv. interest, including pre-judgment and post-judgment interest, on the foregoing sums.

K. Find that this case is exceptional and award Temperpack Technologies, Inc. its costs, expenses, and reasonable attorneys' fees under 35 U.S.C. § 285 and 17 U.S.C. § 505; and

L. Grant such other and further relief as allowed at law or in equity that the Court deems to be appropriate.

**DEMAND FOR JURY TRIAL**

Temperpack Technologies, Inc. hereby respectfully requests a trial by jury of all issues so triable, pursuant to Fed. R. Civ. P. 38.

Dated: August 14, 2026

Respectfully submitted,

*/s/ Jonathan G. Polak*
Jonathan G. Polak (21954-49)
W. Michael Etienne (35221-32)
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204-2023
(317) 713-3500 – phone
(317) 713-3699 – fax
jpolak@taftlaw.com
metienne@taftlaw.com

Christopher J. Forstner (*Pro Hac Vice forthcoming*)
Troutman Pepper Locke LLP
1001 Haxall Point, 15th Fl
Richmond, VA 23219
Tel: 804.697.1200
chris.forstner@troutman.com

Griffin Mesmer (*Pro Hac Vice forthcoming*)
Emma C. Mann (*Pro Hac Vice forthcoming*)
Troutman Pepper Locke LLP
111 Huntington Ave., 9th Fl
Boston, MA 02199
Tel: 617.204.5100
griffin.mesmer@troutman.com
emma.mann@troutman.com

*Counsel for Plaintiff,*
*Temperpack Technologies, Inc.*